```
                  UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
```

_____
                               )
**UNITED STATES OF AMERICA**   )
**et al.**,                    )
                               )
    **Plaintiffs**,        )
                               )
    v.                     ) Civil Action No. 08-2076 (RWR)
                               )
**REPUBLIC SERVICES, INC.**    )
**et al.**,                    )
                               )
    **Defendants.**         )
_____)

## MEMORANDUM OPINION

    The United States and seven states bring suit against defendants Republic Services, Inc. and Allied Waste Industries, Inc., alleging antitrust violations stemming from Republic's acquisition of Allied Waste. The parties have filed a joint motion for entry of final judgment, which would permit the merger to be consummated subject to conditions intended to remedy the violations identified in the complaint. The Center for a Competitive Waste Industry ("CCWI") has filed an amicus brief, arguing that the proposed final judgment is not in the public interest because the divestiture remedies are inadequate when compared to air-space remedies that would allow independent haulers to dump in the merged firms' landfills. Because there is an adequate factual foundation upon which to conclude that the government's proposed divestitures will remedy the antitrust

violations alleged in the complaint, the parties' joint motion will be granted and the proposed final judgment will be entered.

BACKGROUND

Defendants Allied and Republic are the nation's second and third largest waste hauling and disposal companies, respectively. (Compl. ¶¶ 6-7.) They each provide small container commercial waste collection, which entails hauling waste in "dumpsters" -- containers with between one and ten cubic yards of storage -- from commercial and industrial sites to transfer stations or disposal sites. (Id. ¶ 10.) They each also dispose of municipal solid waste ("MSW") -- "solid putrescible waste generated by households and commercial establishments" -- in landfills or incinerators. (Id. ¶¶ 16-17.) On January 22, 2008, Republic entered into a stock purchase agreement to acquire Allied. After a detailed investigation of the proposed transaction, in which the government reviewed "documents and information from the merging parties and others and conducted more than 600 interviews with customers, competitors, and other individuals knowledgeable about the industry[,]" the government concluded that the merger would have anticompetitive effects. (Resp. of the U.S. to Public Comments on the Proposed Final J. ("U.S. Resp.") at 3.) On December 3, 2008, the plaintiffs filed a complaint under § 7 of the Clayton Act, 15 U.S.C. § 18, asserting that the "proposed transaction would substantially lessen competition for small

container commercial waste collection service" and for "MSW disposal service" in various geographic markets.[1]  (Compl. ¶ 1.)

The government filed together with its complaint a stipulation and order under which the parties consented to entry of a proposed final judgment aimed at remedying the alleged anticompetitive effects of the merger.  The parties' proposed final judgment requires Republic to divest nine landfills, ten transfer stations, and eighty-seven small container hauling routes across the fifteen geographic markets identified in the complaint.  (Proposed Final J. at § II(H).)  According to the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, known as the Tunney Act, the government published the proposed final judgment along with a competitive impact statement in the Federal Register on December 16, 2008.  See 73 Fed. Reg. 76,383 (Dec. 16, 2008).  Five comments were received during the sixty-day public comment period, including a detailed comment by CCWI.  In its

---

[1] The complaint alleges that the transaction would lessen competition for small container commercial waste service in Atlanta, Georgia; Cape Girardeau, Missouri; Charlotte, North Carolina; Fort Worth, Texas; Greenville-Spartanburg, South Carolina; Houston, Texas; Lexington, Kentucky; Lubbock, Texas; and Northwest Indiana.

The complaint also alleges that the transaction would lessen competition for MSW disposal service in Atlanta, Georgia; Cape Girardeau, Missouri; Charlotte, North Carolina; Cleveland, Ohio; Denver, Colorado; Flint, Michigan; Fort Worth, Texas; Greenville-Spartanburg, South Carolina; Houston, Texas; Los Angeles, California; Northwest Indiana; Philadelphia, Pennsylvania; and San Francisco, California.  (Compl. ¶ 1.)

public comment, CCWI argued that the proposed final judgment would "not fully remedy the competitive problems identified in the complaint but rather will permit a three-firm oligopoly to consolidate into an even more concentrated two-firm oligopoly based upon a remedy that is fatally discredited by the very parties involved." (Comments of CCWI on the Proposed J. ("CCWI Comment") at 1.) The government responded to the public comments, arguing that many of the competitive concerns raised by CCWI fell outside the face of the government's complaint and that the remedies advanced in the proposed final judgment were both necessary and adequate to remedy the competitive harms that the government had raised in its complaint. (U.S. Resp. at 8-10.) After the parties filed a joint motion for entry of the proposed final judgment, CCWI filed a motion for leave to participate as amicus curiae. CCWI's motion was granted, and it filed an amicus brief arguing that entry of the proposed final judgment would not be in the public interest because the divestiture remedies are inadequate when compared to air-space remedies that would allow independent haulers to dump in the merged firms' landfills.

## DISCUSSION

A court reviews a proposed final judgment to determine if it is in the public interest. 15 U.S.C. § 16(e). Under the Tunney Act, which governs the public interest determination, a court considers:

> (A) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and
>
> (B) the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e)(1). No evidentiary hearing is required to make the public interest determination. 15 U.S.C. § 16(e)(2).

To satisfy the Tunney Act, a settlement as articulated in a proposed final judgment must fall "within the *reaches* of the public interest." United States v. Microsoft Corp., 56 F.3d 1448, 1458 (D.C. Cir. 1995) (citations omitted). "[T]he relevant inquiry is whether there is a factual foundation for the government's decisions such that its conclusions regarding the proposed settlement are reasonable." United States v. SBC Commc'ns, Inc., 489 F. Supp. 2d 1, 15-16 (D.D.C. 2007) (concluding that the 2004 amendments to the Tunney Act did not address or undermine the deferential standard of review articulated in Microsoft). Because the "court's authority to review the decree depends entirely on the government's exercising its prosecutorial discretion by bringing a case in the first

place[,]" a court may not "effectively redraft the complaint" by considering competitive effects that have not been raised or pursued by the government. Microsoft, 56 F.3d at 1459-60.

CCWI argues that entry of the proposed final judgment is not in the public interest because its proposed remedy of divestitures will be less effective at restoring competition than an air-space remedy would be. Such an air-space remedy would require the merged firms "to offer contracts at fair rates and terms to independent haulers for them to be able to dump in the merged firms' landfills." (Br. of Amicus Curiae CCWI ("CCWI Br.") at 3.) CCWI asserts that its proposed remedy would be more likely to restore competition in the relevant markets because the independent haulers have a "record of aggressive competitive behavior" while the larger firms do not. (Id.; see also CCWI Comment at 14 ("Because [the] markets consist of oligopolies[] with lock holds on local landfills, which create bottlenecks that impede new entry, divested assets should be sold to independent haulers with the right to contract for airspace in the merger companies' landfills.").)

The government rejected this proposed relief, arguing that it "would interfere with a landfill owner's ability to manage and operate the assets successfully." (U.S. Resp. at 11.) It reasoned that because independent haulers might not remain in business throughout the useful life of a divested landfill, an

air-space remedy would create uncertainty as to the use of divested assets, jeopardizing their "competitive significance[.]" (Id. at 11-12.) Moreover, the government noted that it favors structural remedies, such as divestitures, that generally avoid continued government interference in a particular market over conduct remedies, such as CCWI's proposed air-space remedy, that require the defendants to take certain actions. (Id. at 12.) Accord California v. Am. Stores Co., 495 U.S. 271, 280-81 (1990) (noting that "divestiture is the preferred remedy for an illegal merger").

"[A] court may not reject a remedy simply because it may not be, in the court's view, the 'best' remedy available." United States v. Enovo Corp., 107 F. Supp. 2d 10, 17 (D.D.C. 2000). The government must demonstrate only that the settlement is a reasonably adequate remedy for the harms alleged in the complaint. United States v. Abitibi-Consol. Inc., 584 F. Supp. 2d 162, 165 (D.D.C. 2008). CCWI's argument that air-space remedies are more likely to restore competition to the small container and MSW markets than the divestitures would be confuses the Tunney Act inquiry. In light of the deferential review to which the government's proposed remedy is accorded, CCWI's argument that an alternative remedy may be comparably superior, even if true, is not a sufficient basis for finding that the proposed final judgment is not in the public interest. The

proposed final judgment may be rejected only if the divestitures are inadequate when considered independently -- and not in comparison to any other possible remedy -- to remedy the competitive harms alleged in the complaint.

Here, the complaint alleges two potential anticompetitive effects of the merger. "The acquisition of Allied voting securities by Republic would remove a significant competitor in small container commercial waste collection and the disposal of MSW in already highly concentrated and difficult-to-enter markets." (Compl. ¶ 25.) As a consequence, the complaint predicted that the merger would result in "higher prices for collection of small container commercial waste or the disposal of MSW." (Id.) CCWI contends that the divestitures in the proposed final judgment are unlikely to restore competition because the defendants have sold many of the divested assets to Waste Connections, Inc. and Veolia Environmental Services Solid Waste, Inc., the fourth and fifth largest waste firms nationwide. (CCWI Br. at 8.) The United States responds that it "approved the acquirers of the divestiture assets based on [a] fact-intensive determination that the acquisitions would not be anticompetitive and that each acquirer of divestiture assets would use those assets to preserve competition in each" of the geographic markets. (Resp. of Pl. U.S. to the Amicus Brief of CCWI at 7.)

A district court owes deference to government predictions about the effects of proposed remedies. Microsoft, 56 F.3d at 1461 (noting that when a "proposed decree comes to a district judge in the first instance as a settlement between the parties that may well reflect weaknesses in the government's case, the district judge must be even more deferential to the government's predictions as to the effect of the proposed remedies" than in an instance in which a judge has been administering a consent decree for a period of time and has gained "at least some familiarity with the market involved"). While CCWI appears to argue that the parties must provide independent factual support for the proposed remedies, a court may "make its public interest determination on the basis of the competitive impact statement and response to comments alone." Enova Corp., 107 F. Supp. 2d at 17. For example, in United States v. AT&T Inc., 541 F. Supp. 2d 2, 7 (D.D.C. 2008), the court concluded that the proposed final judgment was in the public interest without citing expert affidavits or other factual support outside of the complaint and public comments. Here, the government analyzed each geographic market individually and tailored each divestiture to the competitive concerns of the particular market.[2] It based its

---

[2] CCWI also argues that the government's proposed divestitures are inconsistent with the government's position in a previous waste industry merger, in which it rejected the divestiture of assets to one of the three largest firms in the market at the time. (CCWI Br. at 7.) However, because the

analysis on a detailed investigation that included reviewing relevant documents and interviewing over 600 individuals with knowledge of the industry and the merging firms.  Just as in AT&T Inc., "[t]here is a clear and logical relationship between the allegations set forth in the government's complaint and its proposed remedies."  This is sufficient to support a finding that the entry of final judgment in this case is in the public interest.

## CONCLUSION

Because there is a reasonable basis upon which to conclude that the divestitures in the proposed final judgment will adequately remedy the competitive harms alleged in the government's complaint, entry of the proposed final judgment is in the public interest.  The parties' joint motion [16] for entry of final judgment therefore will be granted, and the proposed final judgment will be entered.

---

government analyzes every merger individually, previous mergers -- while potentially providing guidance in analyzing future mergers -- do not function as binding precedent on the government.  Provided there is a factual basis for its determination, the government is free to conclude that divesting assets to the fourth and fifth largest firms in the waste industry will restore competition even if a similar divestiture may not have restored competition in the market more than ten years ago.

SIGNED this 15th day of July, 2010.

                                                  _____/s/_____
                                                  RICHARD W. ROBERTS
                                                  United States District Judge