UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

JUL 15 2010

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>STATE OF CALIFORNIA,<br>COMMONWEALTH OF KENTUCKY,<br>STATE OF MICHIGAN,<br>STATE OF NORTH CAROLINA,<br>STATE OF OHIO,<br>COMMONWEALTH OF PENNSYLVANIA, and<br>STATE OF TEXAS,<br><br>*Plaintiffs,*<br><br>v.<br><br>REPUBLIC SERVICES, INC., and<br>ALLIED WASTE INDUSTRIES, INC.,<br><br>*Defendants.* | Civil Action No.:  O8 - 2O7 6<br><br>**Description: Antitrust**<br><br>**Judge:**<br><br>**Date Stamp:** |

## ~~PROPOSED~~ FINAL JUDGMENT

WHEREAS, plaintiffs, the United States of America, the State of California, the

Commonwealth of Kentucky, the State of Michigan, the State of North Carolina, the State of

Ohio, the Commonwealth of Pennsylvania, and the State of Texas, filed their Complaint on

December 3, 2008; the plaintiffs and defendants, Republic Services, Inc. and Allied Waste

Industries, Inc., by their respective attorneys, have consented to the entry of this Final Judgment

without trial or adjudication of any issue of fact or law; and without this Final Judgment

constituting any evidence against or admission by any party regarding any issue of law or fact;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment

pending its approval by the Court;

1

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of the Divestiture Assets to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestitures required below can and will be made, and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW, THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is hereby ORDERED, ADJUDGED, AND DECREED:

## I. Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against the defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## II. Definitions

As used in this Final Judgment:

A.     "Acquirer" or "Acquirers" means the entity or entities to whom defendants divest the Divestiture Assets.

B.     "Allied" means defendant Allied Waste Industries, Inc., a Delaware corporation with its headquarters in Phoenix, Arizona, its successors, assigns, subsidiaries, divisions, groups,

affiliates, partnerships, and joint ventures, and all of their directors, officers, managers, agents, and employees.

C.      "Republic" means defendant Republic Services, Inc., a Delaware corporation headquartered in Ft. Lauderdale, Florida, its successors, assigns, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and all of their directors, officers, managers, agents, and employees.

D.      "Disposal" means the business of disposing of waste into approved disposal sites, including the use of transfer stations to facilitate shipment of waste to other disposal sites.

E.      "Divestiture Assets" means the Relevant Disposal Assets and the Relevant Hauling Assets.

F.      "Hauling" means small container commercial waste collection from customers and the shipment of the collected waste to disposal sites. Hauling, as used herein, does not include collection of roll-off containers.

G.      "Route" means a group of customers receiving regularly scheduled small container commercial waste collection service and all tangible and intangible assets relating to the route, as of October 31, 2008 (except for *de minimis* changes, such as customers lost and gained in the ordinary course of business), including capital equipment, trucks and other vehicles (those assigned to routes and a pro-rata share of spare vehicles); containers (at the customer location and a pro-rata share of spares); supplies (pro-rata share); and if requested by the Acquirer, the real property and improvements to real property (*e.g.*, garages and buildings that support the route) as specified in Section II, paragraph I below; customer lists; customer and other contracts; leasehold interests; permits/licenses and accounts receivable, excluding franchise customers.

3

H.     "Relevant Disposal Assets" means, unless otherwise noted, with respect to each

transfer station and landfill listed and described herein, all of defendants' rights, titles, and

interests in any tangible asset related to each transfer station and landfill listed, including all fee

simple or ownership rights to offices, garages, related facilities, capital equipment, trucks and

other vehicles, scales, power supply equipment, and supplies; and all of defendants' rights, titles,

and interests in any related intangible assets, including all leasehold interests and renewal rights

thereto, permits, customer lists, contracts, and accounts, or options to purchase any adjoining

property.  Relevant Disposal Assets, as used herein, includes each of the following:

1. **Landfills and Landfill Disposal Agreements**

    a.     **Charlotte, North Carolina**

    Allied's Anson County Landfill, located at 375 Allied Road, Polkton, North

    Carolina 28135;

    b.     **Cleveland, Ohio**

    Allied's Superior Oakland Marsh Landfill, located at 170 Noble Road East, Shiloh,

    Ohio 44878;

    c.     **Denver, Colorado**

    Republic's Front Range Landfill, located at 1830 Weld Company Road 5, Erie,

    Colorado 80516;

    d.     **Flint, Michigan**

    Republic's Brent Run Landfill, located at 8247 Vienna Road, Montrose, Michigan

    48457;

4

**e.     Fort Worth, Texas**

At the Acquirer's option, (i) Allied's Turkey Creek Landfill, located at 9100 South

I-35 West Exit 21, Alvarado, Texas 76009, or (ii) all of Allied's rights, titles, and

interests in the Fort Worth Southeast Landfill, located at 6900 Dick Price Road,

Kennedale, Texas 76060, provided that the City of Fort Worth, owner of the Fort

Worth Southeast Landfill, approves in advance the sale or assignment of Allied's

rights, titles, and interests in the landfill to the Acquirer.  If an Acquirer opts to

purchase all of Allied's rights, titles, and interests in the Fort Worth Southeast

Landfill, defendants will use their best efforts to secure the City of Fort Worth's

approval.

**f.     Greenville-Spartanburg, South Carolina**

Allied's Anderson Regional Landfill, located at 203 Landfill Road, Anderson,

South Carolina 29627;

**g.     Houston, Texas**

> (1)     Republic's Seabreeze Environmental Landfill, located at 10310
>
> FM-523, Angleton, Texas 77515; and
>
> (2)     Rights to landfill disposal, at rates to be negotiated, at Allied's Blue
>
> Ridge Landfill, located at 2200 FM-521 Road, Fresno, Texas 77545,
>
> pursuant to which defendants will reserve capacity for an Acquirer for
>
> MSW disposal under the following minimum terms and conditions:
>
> > a.     A term of ten (10) years from the date of sale of the
> >
> > Relevant Hauling Assets for the Houston, Texas area;

5

b.      The Acquirer may dispose of 600 tons per day of MSW
("Minimum Disposal Amount") and no more than 1,000 tons per
day of direct-haul MSW ("Maximum Disposal Amount") at the
Blue Ridge Landfill ("Maximum Disposal Amount"), during each
six (6) calendar month period during the term of the agreement, to
be pro rated for any partial periods at the beginning and end of the
agreement.  The agreement may also provide that if the Acquirer
disposes of less than the prevailing Minimum Disposal Amount
during any such six (6) month period, then the Minimum Disposal
Amount and the Maximum Disposal Amount may be reduced for
the remainder of the disposal agreement term by a tonnage amount
equal to the shortfall amount.

c.      For the Acquirer of the landfill  disposal agreement,
defendants must commit to operate the Blue Ridge Landfill gates,
scale houses, and disposal areas under terms and conditions no less
favorable than those provided to defendants' own vehicles or to the
vehicles of any municipality in the metropolitan Houston area,
except as to price and credit terms; and

d.      At any time during the life of the agreement, the Acquirer
has the right to terminate the agreement upon ninety (90) days'
written notice to defendants.

6

**h.     Los Angeles, California**

Republic's Chiquita Canyon Sanitary Landfill, 29201 Henry Mayo Drive,

Valencia, California 91355;

**i.     Northwest Indiana**

At the option of the Acquirer of the Valparaiso Transfer Station, landfill disposal

rights, at rates to be negotiated, at Allied's Newton County Development

Corporation Landfill ("Newton County Landfill"), located at 2266 East 500 South

Road, Brook, Indiana 47922, pursuant to which defendants will offer to reserve

350 tons per day of capacity for an Acquirer for MSW disposal at Newton County

Landfill, under the following minimum terms and conditions:

> (1)     A term of two (2) years from the date of sale of the Valparaiso
>
> Transfer Station;
>
> (2)     The Acquirer may dispose of up to 350 tons per day of MSW at
>
> Newton County Landfill;
>
> (3)     For the Acquirer of the landfill disposal agreement, defendants must
>
> commit to operate the Newton County Landfill gates, scale houses, and
>
> disposal areas under terms and conditions no less favorable than those
>
> provided to defendants' own vehicles or to the vehicles of any municipality
>
> in the Northwest Indiana area, except as to price and credit terms; and

(4)     At any time during the life of the agreement, the Acquirer has the

right to terminate the agreement upon thirty (30) days' written notice to

defendants.

**j.     Philadelphia, Pennsylvania**

At the option of the Acquirer of the Girard Point Transfer Station and the

Philadelphia Recycling and Transfer Station, rights to landfill disposal, at rates to

be negotiated, at Republic's Modern Landfill, located at 4400 Mount Pisgah Road,

York, Pennsylvania 17402, pursuant to which defendants will reserve capacity for

an Acquirer for MSW disposal at Modern Landfill, under the following minimum

terms and conditions:

(1)     A term of eighteen (18) months from the date of sale of the Girard

Point Transfer Station and the Philadelphia Recycling and Transfer Station;

(2)     The Acquirer may dispose of up to 1300 tons per day of MSW at

the Modern Landfill;

(3)     For the Acquirer of the landfill disposal agreement, defendants must

commit to operate the Modern Landfill gates, scale houses, and disposal

areas under terms and conditions no less favorable than those provided to

defendants' own vehicles or to the vehicles of any municipality in the

Philadelphia, Pennsylvania area, except as to price and credit terms; and

(4)     At any time during the life of the agreement, the Acquirer has the

right to terminate the agreement upon thirty (30) days' written notice to

defendants.

**k.     San Francisco, California**

Republic's Potrero Hills Sanitary Landfill, located at 3675 Potrero Hills Lane,

Suisun, California 94585, except that Republic need not convey (i) the right to

control the location of disposal for waste volumes that Republic has disposed of at

Potrero Hills Sanitary Landfill via transfer through the Golden Bear Transfer

Station or contracts covering the disposal of such waste, or (ii) contracts between

the Republic subsidiary that owns Potrero Hills Sanitary Landfill and Alameda

County Industries to the extent those contracts govern disposal of waste at Vasco

Road Landfill.

**2.     Transfer Stations**

**a.     Atlanta, Georgia**

(i)     Republic's Central Gwinnett Transfer Station, located at 535

Seaboard Industrial Drive, Lawrenceville, Georgia 30045; and

(ii)     Allied's BFI Smyrna Transfer Station, located at 4696 South Cobb

Drive, Smyrna, Georgia 30080;

**b.     Cape Girardeau, Missouri**

Allied's Jackson Solid Waste Transfer Station, located at 2004 Lee Avenue, Hwy

25 N, Jackson, Missouri 63755;

**c.     Charlotte, North Carolina**

Republic's Queen City Transfer Station, located at 3130 Jeff Adams Drive,

Charlotte, North Carolina 28206;

**d.     Cleveland, Ohio**

Republic's Harvard Road Transfer Station, located at 3227 Harvard Road,

Newburgh Heights, Ohio 44105;

**e.     Greenville-Spartanburg, South Carolina**

Allied's Greer Transfer Station, located at 590 Gilliam Road, Greer, South

Carolina 29651;

**f.     Houston, Texas**

Republic's Hardy Road Transfer Station, located at 18784 Hardy Road, Houston,

Texas 77073;

**g.     Northwest Indiana**

Allied's Valparaiso Transfer Station, located at 3101 Bertholet Boulevard,

Valparaiso, Indiana 46383; and

**h.     Philadelphia, Pennsylvania**

(i)  Republic's Girard Point Transfer Station, located at 3600 South 26th

Street, Philadelphia, Pennsylvania 19145; and

(ii) Allied's Philadelphia Recycling and Transfer Station, located at 2209

South 58th Street, Philadelphia, Pennsylvania 19143.

I.     "Relevant Hauling Assets," unless otherwise noted, means the small container

commercial waste collection routes and other assets listed below:

1.      **Atlanta, Georgia**

(a) Allied's small container commercial waste collection routes 123, 130, 131, 132, 133, 136, 137, 138, 141, 142, 144, 146, and 147; and (b) at the Acquirer's option, the hauling facility located at 1581 Fulenwider Road, Gainesville, Georgia;

2.      **Cape Girardeau, Missouri**

(a) Allied's small container commercial waste collection routes 790 and 791; and (b) at the Acquirer's option, the hauling facility located at 281 Rambler Road, Jackson, Missouri;

3.      **Charlotte, North Carolina**

(a) Republic's small container commercial waste collection routes A001, A002, A003, A004, A005, A007, A008, A009, A010, and A012; and (b) at the Acquirer's option, the hauling facility located at 5516 Rozzelles Ferry Road, Charlotte, North Carolina;

4.      **Fort Worth, Texas**

(a) Republic's small container commercial waste collection routes VA, VB, VC, VD, and VE; and (b) notwithstanding any other provision of this Final Judgment, in the event an Acquirer purchases Allied's rights, titles and interests in the Fort Worth Southeast Landfill, the Acquirer shall have the option to lease a sufficient portion of the Republic yard located at 1212 Harrison Avenue, Arlington, Texas for a period of six (6) months with an option to renew for one additional six (6) month period, under a lease to permit the Acquirer to support fully the operation of

11

the divested small container commercial waste collection routes and the potential

growth of the divested hauling business to include additional routes;

**5.      Greenville-Spartanburg, South Carolina**

(a) Allied's small container commercial waste collection routes 701, 704, 705, 708,

714, 718, 719, and 720; and (b) at the Acquirer's option, the hauling facility

located at 101 Rogers Bridge Road, Duncan, South Carolina;

**6.      Houston, Texas**

(a) Republic's small container commercial waste collection routes A002, A004,

A005, A006, A008, A009, A010, A011, A012, A017, A024, A027, A028, A029,

A031, A034, A035, A038, A040, A042, A043, A044, A045, A046, A049, A052,

A053, A054, A055, A058, A059, and A060; and (b) at the Acquirer's option, the

hauling facility located at 2010 Wilson Road, Houston, Texas;

**7.      Lexington, Kentucky**

(a) Republic's small container commercial waste collection routes 31, 32, 34, 36,

and 37; and (b) at the Acquirer's option, the hauling facility located at 4000 Park

Central Court, Nicholasville, Kentucky;

**8.      Lubbock, Texas**

(a) Allied's small container commercial waste collection routes 1711, 1713, 1714,

1911, 1912, 1913, and 1914; and (b) at the Acquirer's option, the hauling facility

located at 1812 CR-60, Lubbock, Texas; and

9.     **Northwest Indiana**

(a) Allied's small container commercial waste collection routes 150, 751, 754, 756,

and 757; and (b) at the Acquirer's option, the hauling facility located at 3101

Bertholet Boulevard, Valparaiso, Indiana.

J.     "Relevant State" means the state or commonwealth in which the Divestiture Assets

are located, provided, however, that state or commonwealth is a party to this Final Judgment.

K.     "Small container commercial waste collection" means the business of collecting

municipal solid waste from commercial and industrial accounts, usually in "dumpsters" (*i.e.*, a

small container with one to ten cubic yards of storage capacity), and transporting or "hauling"

such waste to a disposal site by use of a front-end or rear-end load truck.  Typical small container

commercial waste collection customers include office and apartment buildings and retail

establishments (*e.g.*, stores and restaurants).  As used herein, "small container commercial waste

collection" does not include small container commercial waste collection of franchised routes.

L.     "MSW" means municipal solid waste, a term of art used to describe solid

putrescible waste generated by households and commercial establishments.  Municipal solid waste

does not include special handling waste (*e.g.*, waste from manufacturing processes, regulated

medical waste, sewage and sludge), hazardous waste or waste generated by construction or

demolition sites.

## III. Applicability

A.     This Final Judgment applies to Republic and Allied, as defined above, and all other

persons in active concert or participation with any of them who receive actual notice of this Final

Judgment by personal service or otherwise.

B.      If, prior to complying with Sections IV and V of this Final Judgment, defendants

sell or otherwise dispose of all or substantially all of their assets or of lesser business units that

include the defendants' Divestiture Assets, they shall require the purchaser to be bound by the

provisions of this Final Judgment.  Defendants need not obtain such an agreement from the

Acquirer of the assets divested pursuant to this Final Judgment.

## IV. Divestitures

A.      Defendants are ordered and directed, within 90 calendar days after the filing of the

Complaint in this matter, or five (5) calendar days after notice of the entry of this Final Judgment

by the Court, whichever is later, to divest all Divestiture Assets in a manner consistent with this

Final Judgment to an Acquirer(s) acceptable to the United States in its sole discretion, after

consultation with the Relevant State.  With respect to the Atlanta, Georgia; Cleveland, Ohio;

Philadelphia, Pennsylvania; and Ft. Worth, Texas areas, the Divestiture Assets in each area must

be offered for sale to prospective Acquirers separately from Divestiture Assets in other areas.  All

of the Divestiture Assets serving any single relevant area shall be sold to the same Acquirer,

unless defendants receive the prior written consent of the United States.  The United States, in its

sole discretion, after consultation with the Relevant State, may agree to one or more extensions of

this time period not to exceed sixty (60) calendar days in total, and shall notify the Court in such

circumstances.  Defendants agree to use their best efforts to divest the Divestiture Assets as

expeditiously as possible.

B.      In accomplishing the divestitures ordered by this Final Judgment, defendants

promptly shall make known, by usual and customary means, the availability of the Divestiture

Assets.  Defendants shall inform any person making inquiry regarding a possible purchase of the

Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privilege or work-product doctrine. Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

C.      Defendants shall provide the Acquirer(s) and the United States information relating to all personnel involved in the operation and management of the Divestiture Assets to enable the Acquirer(s) to make offers of employment. Defendants shall not interfere with any negotiations by the Acquirer(s) to employ or contract with any defendant employee whose primary responsibility is the operation or management of the Divestiture Assets.

D.      Defendants shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities of the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational or other documents and information customarily provided as part of a due diligence process.

E.      Defendants shall warrant to the Acquirer(s) that each asset will be operational on the date of sale.

F.      In the event that the Turkey Creek Landfill is not, for any reason, fully operational and capable of disposing of at least 675,000 tons of MSW annually at the time of its divestiture, defendants shall be required to divest alternative disposal assets in the Fort Worth, Texas area that

15

are sufficient to achieve the purposes of this Final Judgment to the satisfaction of the United States, in its sole discretion, after consultation with the State of Texas.

G.     Defendants shall not take any action that will impede in any way the permitting, operation or divestiture of the Divestiture Assets.

H.     Defendants shall warrant to each Acquirer that there are no material defects in the environmental, zoning or other permits pertaining to the operation of the Divestiture Assets, and that following the sale of the Divestiture Assets, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

I.     Unless the United States, after consultation with the Relevant State, otherwise consents in writing, the divestitures pursuant to Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment, shall include all the Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, after consultation with the Relevant State, that the divestiture will achieve the purposes of this Final Judgment and that the Divestiture Assets can and will be used by an Acquirer(s) as part of a viable, ongoing disposal or hauling business in each relevant area.   The divestitures, whether pursuant to Section IV or Section V of this Final Judgment:

> (1)     shall be made to an Acquirer(s) that, in the United States's sole judgment, after consultation with the Relevant State, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the disposal or hauling business; and

(2)    shall be accomplished so as to satisfy the United States, in its sole

discretion, after consultation with the Relevant State, that none of the terms of any

agreement between an Acquirer(s) and defendants gives defendants the ability

unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or

otherwise to interfere in the ability of the Acquirer to compete effectively.

## V.  Appointment of Trustee

A.    If defendants have not divested the Divestiture Assets within the time period

specified in Section IV, Paragraph A, defendants shall notify the United States of that fact in

writing.  Upon application of the United States, the Court shall appoint a trustee selected by the

United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.    After the appointment of a trustee becomes effective, only the trustee shall have the

right to sell the Divestiture Assets.  The trustee shall have the power and authority to accomplish

the divestitures to an Acquirer(s) acceptable to the United States, after consultation with the

Relevant State, at such price and on such terms as are then obtainable upon reasonable effort by

the trustee, subject to the provisions of Sections IV, V and VI of this Final Judgment, and shall

have such other powers as this Court deems appropriate.  Subject to Section V, Paragraph D of

this Final Judgment, the trustee may hire at the defendants' cost and expense any investment

bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably

necessary in the trustee's judgment to assist in the divestitures.

C.    Defendants shall not object to a sale by the trustee on any ground other than the

trustee's malfeasance.  Any objection by defendants on the ground of the trustee's malfeasance

17

must be conveyed in writing to the United States and the trustee within ten (10) calendar days

after the trustee has provided the notice required under Section VI.

D.      The trustee shall serve at the cost and expense of defendants, on such terms and

conditions as the United States approves, and shall account for all monies derived from the sale of

the assets sold by the trustee and all costs and expenses so incurred.  After approval by the Court

of the trustee's accounting, including fees for its services and those of any professionals and

agents retained by the trustee, all remaining money shall be paid to defendants and the trust shall

then be terminated.  The compensation of the trustee and any professionals and agents retained by

the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee

arrangement providing the trustee with an incentive based on the price and terms of the

divestitures and the speed with which they are accomplished, but timeliness is paramount.

E.      Defendants shall use their best efforts to assist the trustee in accomplishing the

required divestitures.  The trustee and any consultants, accountants, attorneys, and other persons

retained by the trustee shall have full and complete access to the personnel, books, records, and

facilities of the business to be divested, and defendants shall develop financial and other

information relevant to such business as the trustee may reasonably request, subject to reasonable

protection for trade secret or other confidential research, development, or commercial

information.  Defendants shall take no action to interfere with or to impede the trustee's

accomplishment of the divestitures.

F.      After its appointment, the trustee shall file monthly reports with the United States,

the Relevant State, and the Court setting forth the trustee's efforts to accomplish the divestitures

ordered under this Final Judgment.  To the extent such reports contain information that the trustee

deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G.      If the trustee has not accomplished the divestitures ordered under this Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth: (1) the trustee's efforts to accomplish the required divestitures; (2) the reasons, in the trustee's judgment, why the required divestitures have not been accomplished; and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

## VI. **Notice of Proposed Divestiture**

A.      Within two (2) business days following execution of a definitive divestiture agreement, defendants or the trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States and the Relevant State of any proposed divestiture required by Section IV or V of this Final Judgment. If the trustee is responsible, it shall similarly

19

notify defendants.  The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States and the Relevant State of such notice, the United States, in its sole discretion, after consultation with the Relevant State, may request from defendants, the proposed Acquirer(s), any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer.  Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from defendants, the proposed Acquirer(s), any third party, and the trustee, whichever is later, the United States, in its sole discretion, after consultation with the Relevant State, shall provide written notice to defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture.  If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Section V, Paragraph C of this Final Judgment.  Absent written notice that the United States does not object to the proposed Acquirer(s) or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated.  Upon objection by

defendants under Section V, Paragraph C, a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. Notice of Future Acquisitions

Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), defendants, without providing advance notification to United States and the Relevant State, shall not directly or indirectly acquire, any (1) interest in any business engaged in a relevant service in a relevant area, (2) assets (other than in the ordinary course of business) used in a relevant service in a relevant area, (3) capital stock, or (4) voting securities of any person that, at any time during the twelve (12) months immediately preceding such acquisition, was engaged in MSW disposal or small container commercial waste collection in any relevant area, where that person's annual revenues in the relevant area from MSW disposal and/or small container commercial waste collection service were in excess of $500,000 annually. For clarity, this provision also applies to an acquisition of disposal facilities that serve a relevant area but are located outside the relevant area, whether or not they are physically located in the relevant area.

Such notification shall be provided to the United States in the same format as, and per the instructions relating to the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended, except that the information requested in Items 5 through 8 of the instructions must be provided only about the relevant service. Notification shall be provided at least thirty (30) calendar days prior to acquiring any such interest, and shall include, beyond what may be required by the applicable instructions, the names

of the principal representatives of the parties to the agreement who negotiated the agreement, and

any management or strategic plans discussing the proposed transaction.  If within the 30-day

period after notification, representatives of the Antitrust Division make a written request for

additional information, defendants shall not consummate the proposed transaction or agreement

until thirty (30) calendar days after submitting all such additional information.  Early termination

of the waiting periods in this paragraph may be requested and, where appropriate, granted in the

same manner as is applicable under the requirements and provisions of the HSR Act and rules

promulgated thereunder.  This Section shall be broadly construed and any ambiguity or uncertainty

regarding the filing of notice under this Section shall be resolved in favor of filing notice.

| AREAS FOR WHICH NOTICE PROVISION APPLIES | | |
|---|---|---|
| **Relevant Area** | **Counties** | **Relevant Service** |
| Atlanta, GA | Cherokee, Forsyth, Hall, Jackson, Barrow, Gwinnett, Walton, DeKalb, Rockdale, Fulton, Clayton, Cobb and Paulding Counties | hauling and transfer station disposal |
| Cape Girardeau, MO | Cape Girardeau County | hauling and transfer station disposal |
| Charlotte, NC | Mecklenburg County | hauling and transfer station and landfill disposal |
| Cleveland, OH | Cuyahoga County | transfer station and landfill disposal |
| Denver, CO | Denver and Arapahoe Counties | landfill disposal |
| Flint, MI | Saginaw and Genesee Counties | landfill disposal |
| Fort Worth, TX | Tarrant County | hauling and landfill disposal |

| Greenville-Spartanburg, SC | Greenville and Spartanburg Counties | hauling and transfer station and landfill disposal |
|---|---|---|
| Houston, TX | Harris County | hauling and transfer station and landfill disposal |
| Lexington, KY | Fayette, Jessamine, Woodford, Scott and Franklin Counties | hauling |
| Los Angeles, CA | Los Angeles County | landfill disposal |
| Lubbock, TX | Lubbock County | hauling |
| Northwest Indiana | Lake, Porter and LaPorte Counties | hauling and transfer station disposal |
| Philadelphia, PA | Philadelphia County | transfer station disposal |
| San Francisco, CA | Contra Costa, Solano and Alameda Counties | landfill disposal |

## VIII. Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## IX. Hold Separate

Until the divestitures required by this Final Judgment has been accomplished, defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestitures ordered by this Court.

## X. Affidavits

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and

every thirty (30) calendar days thereafter until the divestitures has been completed under Section

IV or V, defendants shall deliver to the United States and the Relevant State an affidavit as to the

fact and manner of its compliance with Section IV or V of this Final Judgment. Each such

affidavit shall include the name, address, and telephone number of each person who, during the

preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring,

entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any

interest in the Divestiture Assets, and shall describe in detail each contact with any such person

during that period. Each such affidavit shall also include a description of the efforts defendants

have taken to solicit buyers for the Divestiture Assets, and to provide required information to

prospective Acquirers, including the limitations, if any, on such information. Assuming the

information set forth in the affidavit is true and complete, any objection by the United States, after

consultation with the Relevant State, to information provided by defendants, including limitation

on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter,

defendants shall deliver to the United States an affidavit that describes in reasonable detail all

actions defendants have taken and all steps defendants have implemented on an ongoing basis to

comply with Section IX of this Final Judgment. Defendants shall deliver to the plaintiffs an

affidavit describing any changes to the efforts and actions outlined in defendants' earlier affidavits

filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

24

C.      Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestitures have been completed.

## XI. Compliance Inspection

A.      For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice Antitrust Division ("DOJ"), including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

(1)      access during defendants' office hours to inspect and copy, or at the option of the United States, to require defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of defendants, relating to any matters contained in this Final Judgment; and

(2)      to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters.  The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports or responses

to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.     No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, or the Attorney General's Office of any other plaintiff, except in the course of legal proceedings to which the United States or any other plaintiff is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.     If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XII. No Reacquisition

During the term of this Final Judgment, defendants may not reacquire any part of the Divestiture Assets, nor may any defendant participate in any other transaction that would result in a combination, merger, or other joining together of any part of the Divestiture Assets with assets of the divesting company.

26

### XIII.  Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

### XIV.  Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

### XV.  Public Interest Determination

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States's responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: _July 15, 2010_

Court approval subject to procedures
of Antitrust Procedures and Penalties
Act, 15 U.S.C. § 16

_____
United States District Judge